UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 11-50027-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| DAVID OLMSTED, a/k/a | ) | |
| DALE COOPER, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

Defendant David Olmsted, a/k/a Dale Cooper, Jr., is charged by a second superseding indictment (the "indictment") with 198 criminal offenses, two forfeiture allegations, and a money judgment allegation. (Docket 37). The criminal allegations are grouped as follows:

- Count 1: On or about between December 27, 2008, and March 14, 2011, failure to register a money transmitting business in violation of 31 U.S.C. § 5330;

- Counts 2-37: On or about between February 7, 2011, to March 14, 2011, failing to report on exporting and importing monetary instruments in violation of 31 U.S.C. §§ 5316(a)(2) & (d) and 5312(a)(3);

- Counts 38-72: On or about between February 7, 2011, and March 14, 2011, failing to report on exporting and importing monetary instruments in violation of 31 U.S.C. § 5324(c)(3);

Counts 73-122:   On or about between February 7, 2011, and March 14, 2011, mail fraud in violation of 18 U.S.C. § 1341; and

Counts 123-198:  On or about between February 7, 2011, and March 14, 2011, wire fraud in violation of 18 U.S.C. § 1343.

Id. Defendant filed a number of motions which are summarized as follows:

1. Motion to dismiss counts 38-72 as multiplicitous (Docket 60);

2. Motion to dismiss counts 38-72 as unconstitutionally vague (Docket 68);

3. Motion to sever the grouped charges (Docket 70); and

4. Motion for a Daubert[1] hearing (Docket 88).

The government objects to each of these motions. (Dockets 73, 84, 86 & 91). Following the completion of briefing, the motions are ripe for resolution. The court addresses each motion separately.

**DISCUSSION**

**1.   MOTION TO DISMISS COUNTS 38-72 AS MULTIPLICITOUS**

The Double Jeopardy Clause of the Fifth Amendment prohibits the imposition of multiple punishments for the same crime. United States v. Two Elk, 536 F.3d 890, 898 (8th Cir. 2008). "An indictment is multiplicitous

---

[1]Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

if it charges the same crime in two counts. The main difficulty with such an indictment is that the jury can convict the defendant on both counts, subjecting the defendant to two punishments for the same crime in violation of the double-jeopardy clause of the fifth amendment." United States v. Chipps, 410 F.3d 438, 447 (8th Cir. 2005) (internal citation omitted). To demonstrate that an indictment violates the double jeopardy clause, a defendant must show " 'that the two offenses charged are in law and fact the same offense.' " Two Elk, 536 F.3d at 898 (quoting United States v. Roy, 408 F.3d 484, 491 (8th Cir. 2005)).

To determine if multiple offenses charged " 'are in law and fact the same offense,' " courts "must scrutinize the statute in question to determine 'whether Congress intended the facts underlying each count to make up a separate unit of prosecution.' " Id. (quoting Roy, 408 F.3d at 491; Chipps, 410 F.3d at 447). "The unit of prosecution is the aspect of criminal activity that Congress intended to punish." Chipps, 410 F.3d at 448. Courts look to "the statutory language, legislative history, and statutory scheme to ascertain what Congress intended the unit of prosecution to be." Id. If Congress fails to clearly and unambiguously identify the unit of prosecution, courts "resolve doubt as to congressional intent in favor of lenity for the defendant." Id. (citing Bell v. United States, 349 U.S. 81, 83-84 (1955)).

Defendant argues counts 38-72 of the indictment are multiplicitous because "[t]he government claims that all off [sic] the money within Mr. Olmsted's account was the product of his unlicensed business. By analogy to Kushner[2] the multiple counts are one offense and should be consolidated into one count." (Docket 61 at p. 2).

In Kushner, the defendants were charged with "over 100 counts of 'structuring'[3] in violation of 31 U.S.C. § 5324." Kushner, 256 F. Supp. 2d at 112. The Defendants were "charged . . . with independent structuring counts for each day in which the Defendants attempted to avoid the federal reporting requirements." Id. The court found "Defendants did not 'structure' on a daily basis. . . . It is not the day . . . that is critical or even significant to the structuring here. *All* of the money within the Defendants' accounts was the product of the Defendants' unlicensed business, and it was the sum in its entirety that the Defendants sought to conceal. They achieved concealment by avoiding daily reporting requirements, but the

---

[2]United States v. Kushner, 256 F. Supp. 2d 109 (D. Mass. 2003).

[3]"Structuring" under § 5324(c)(3) is "the breaking down of a single sum of currency exceeding $10,000 into smaller sums, including sums at or below $10,000, or the conduct of a transaction, or series of currency transactions at or below $10,000." 31 C.F.R. § 1010.100(xx). See also Ratzlaf v. United States, 510 U.S. 135, 136 (1994) ("It is illegal to 'structure' transactions—i.e., to break up a single transaction above the reporting threshold into two or more separate transactions—for the purpose of evading a financial institution's reporting requirement. 31 U.S.C. § 5324.").

4

amount of the daily withdrawals are irrelevant." Id. at 113 (emphasis in original). Each of the Kushner transactions involved "withdrawals from a bank–as opposed to deposits–thus making it more difficult to trace funds to particular sources." Id. at 113. "If the Government chooses to identify the various sources from which the money . . . was derived . . . the Government could . . . charge these transactions as separate structuring counts . . . ." Id. at 114. The Kushner court found the 100 counts were multiplicitous because "the structuring as alleged here was not conducted so as to withdraw discrete amounts of money daily to avoid the reporting requirements; it was structured so that the daily reporting requirements would reveal neither the overall scheme, nor the substantial amounts of cash the Defendants illegally received from various sources." The court concluded this rationale would not apply to the other counts of the indictment charging failing to file currency reports because for "each day in which a required [currency report] was not filed, the Defendants may be charged with a separate offense . . . ." Id. at n. 6.

The caption page of defendant's second superseding indictment, without referencing to which counts the designated offense category relates, identifies "UNLAWFUL STRUCTURE OF TRANSACTIONS TO EVADE REPORTING REQUIREMENTS (31 U.S.C. § 5324(c))." (Docket 37 at p. 1).

5

The general allegations section of the indictment introducing counts 38-72 contains the following language:

> On or about between February 7, 2011, and March 14, 2011, in the District of South Dakota and elsewhere, the defendant, David Olmsted, knowingly failed to file a report as required by 31 U.S.C. § 5613,[4] and caused and attempted to cause a person to fail to file such a report, for the purpose of evading the reporting requirements of 31 U.S.C. § 5613,[5] all in violation of 31 U.S.C. § 5324(c).

Id. at pp. 4-5. Section 5316 requires:

> [A] person . . . shall file a report under subsection (b) of this section when the person . . . knowingly--
>
> > (1) transports, is about to transport, or has transported, monetary instruments of more than $10,000 at one time . . .
> >
> > > (B) to a place in the United States from or through a place outside the United States; or
> >
> > (2) receives monetary instruments of more than $10,000 at one time transported into the United States from or through a place outside the United States.

31 U.S.C. § 5316(a) (a "currency report").

Reviewing the specific allegations of each of the separate counts discloses these alleged offenses are not "structuring" offenses under

---

[4]This appears to be a typographical error, as there is no "31 U.S.C. § 5613." The correct citation is to "31 U.S.C.A. § 5316. Reports on exporting and importing monetary instruments." The court will address § 5316 for the remainder of this order.

[5]See footnote 4 above.

6

§ 5324(c)(3), but rather are "failure to file report" offenses under

§ 5324(c)(1). That section provides:

> (c) International monetary instrument transactions.--No person shall, for the purpose of evading the reporting requirements of section 5316--
>
>> (1) fail to file a [currency report] . . . or cause or attempt to cause a person to fail to file such a report . . . .

31 U.S.C. § 5324(c)(1). Each count's specific allegations allege Mr. Olmsted was required to file a currency report because each alleged transaction exceeded $10,000. (Docket 37 at pp. 4-6). There is no allegation Mr. Olmsted "structured" the transactions to avoid filing a currency report as contemplated by § 5324(c)(3). Id. The government's allegations identify the source of each transaction and each transaction as alleged requires a currency report. Id.

Each separate transaction is the "unit of prosecution," i.e., "the aspect of criminal activity that Congress intended to punish." Chipps, 410 F.3d at 448. "The source of the funds and the timing of the deposits . . . are relevant in ascertaining the true scope of the offense conduct at issue. . . . the statutory language and the statutory scheme indicate the intended unit of prosecution is a 'transaction.'" United States v. Catherman, 4:07-cr-00106-JEG, 2007 WL 2790384 at *4 (S.D. Iowa Sept. 24, 2007).

The court finds each count within counts 38-72, independent of the others, is a separate transaction, the "unit of prosecution" which 31 U.S.C.

§ 5324(c)(1) makes illegal. The court concludes each separate transaction stands as a separate alleged offense.

Defendant's motion to dismiss counts 38-72 (Docket 60) is denied.

The court's analysis raises separate issues which must be briefed by the parties. Those issues are:

1. Do counts 2-37 allege criminal offenses;

2. If counts 2-37 properly allege criminal offenses, are those counts multiplicitous to counts 38-72 as now defined by the court; and

3. If the groupings are multiplicitous, which grouping should be dismissed to eliminate a multiplicity challenge.

**2. MOTION TO DISMISS COUNTS 38-72 AS UNCONSTITUTIONALLY VAGUE**

"The Fifth Amendment guarantees every citizen the right to due process. Stemming from this guarantee is the concept that vague statutes are void." United States v. Washam, 312 F.3d 926, 929 (8th Cir. 2002) (referencing Connally v. General Construction Co., 269 U.S. 385, 391 (1926)). "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." Id. (citing Connally, 269 U.S. at 391). "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is

proscribed." Id. (citing United States v. National Dairy Products Corp., 372 U.S. 29, 32-33 (1963)).

Defendant argues the word "structure" or "structuring" in 31 U.S.C. § 5324(c)(3) "has no plain meaning." (Docket 69 at p. 2). As indicated above, "structuring" under § 5324(c)(3) is "the breaking down of a single sum of currency exceeding $10,000 into smaller sums, including sums at or below $10,000, or the conduct of a transaction, or series of currency transactions at or below $10,000." 31 C.F.R. § 1010.100(dd). The United States Supreme Court in Ratzlaf also described the process of illegal structuring under § 5324(c)(3). "It is illegal to 'structure' transactions—i.e., to break up a single transaction above the reporting threshold into two or more separate transactions—for the purpose of evading a financial institution's reporting requirement. 31 U.S.C. § 5324." Ratzlaf, 510 U.S. at 136.

The defendant is not charged with structuring monetary transactions to avoid the currency reporting requirements of § 5324(c)(3). But to put defendant's claim to rest, the word "structure" or "structuring" under § 5324(c) is neither vague nor ambiguous. The statute gives "adequate notice of the proscribed conduct. . . . [and does] not lend itself to arbitrary enforcement." Washam, 312 F.3d at 929. Section 5324 puts a person of

9

ordinary intelligence on notice that breaking down money transactions to avoid the currency reporting requirements violates the statute. Id. at 930.

Defendant's motion (Docket 68) is denied.

### 3. MOTION TO SEVER THE GROUPED CHARGES

Defendant argues "[t]he offenses set forth in the superseding indictment are disparate and dissimilar. . . . Each of the multiple five categories of offenses involve their own evidence so there is no overlap; obviously, the government has added wire and mail fraud only to increase the maximum prison sentence. . . . Mr. Olmsted should be granted nine separate jury trials, one each for the five different groups of offenses charged against him, and four more, one for each forfeiture, and one for the money judgment." (Docket 71 at pp. 3 & 5).

Fed. R. Crim. P. 8 provides:

> The indictment . . . may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(a). "Joinder of offenses is proper where the two counts refer to the same type of offenses occurring over a relatively short period of time, and the evidence as to each count overlaps." United States v. Shearer, 606 F.2d 819, 820 (8th Cir. 1979). "Offenses that are similar in character and occurred over a short period of time are ordinarily joined." United

States v. Rossbach, 701 F.2d 713, 718 (8th Cir. 1983). "The trial court's refusal to order separate trials or grant severance, however, may be overturned only for an abuse of discretion." Miller v. United States, 410 F.2d 1290, 1293 (8th Cir. 1969).

The government argues "the 198 charges and allegations all involve the defendant's business of selling foreign currency so all were of the same or similar character and close in time and proximity." (Docket 85 at p. 2). "The United States submits that the evidence will show that all of the charges . . . are directly related to the defendant's sale of foreign currency from December 27, 2008, to March 14, 2011." Id. "[T]he alleged acts are of the same or similar character, and also constitute parts of a common scheme or plan." Id. The government also argues the "evidence proving each charge would be relevant for proving the defendant was aware of the criminal nature of his actions and therefore was acting knowingly and not by mistake or accident." Id. at p. 3.

The grouping of offenses charged is alleged to have occurred in a two and one-half year time frame and involve Iraqi Dinars. "[T]hey [are] sufficiently related to comprise a common scheme or plan and to make joinder proper." United States v. Jordan, 602 F.2d 171, 172 (8th Cir. 1979). Joinder of charges alleged to have occurred over similar time periods have

11

been approved by the United States Court of Appeals for the Eighth Circuit.[6]
"Because evidence of the other incident[s] would [be] admissible under Fed. R. Evid. 404(b) to demonstrate intent and knowledge in a separate trial of [any of the] count[s], defendant cannot complain of prejudice in defending against [all] counts in one trial." Id. at 173. Joinder of all of the groups of charges is proper under Rule 8(a).

Defendant also argues "[j]oinder of the charges will interfere with Mr. Olmstad's constitutional right to testify." (Docket 71 at p. 4). Fed. R. Crim. P. 14 allows the court to sever counts of an indictment even if they are properly joined initially. "If the joinder of offenses . . . in an indictment . . . for trial appears to prejudice a defendant . . . , the court may order separate trials of counts . . . or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

"The burden is on the defendant to show prejudice from the joinder." United States v. Bear, CR 08-50067-01-KES, 2009 WL 2905587 at *1 (D.S.D. Sept. 3, 2009) (referencing United States v. Blum, 65 F.3d 1436, 1444 (8th Cir. 1995)). "Severance of counts is warranted when a defendant

---

[6]See United States v. Tyndall, 263 F.3d 848 (8th Cir. 2001) (sexual assault—1 year); United States v. Running Horse, 175 F.3d 635 (8th Cir. 1999) (sexual abuse—4 years); United States v. Lindsey, 782 F.2d 116 (8th Cir. 1986) (firearms possession—17 months); and United States v. Rodgers, 732 F.2d 625 (8th Cir. 1984) (narcotics distribution—20 months); United States v. Hastings, 577 F.2d 38 (8th Cir. 1978) (counterfeiting—2 years).

12

has made a convincing showing that he has both important testimony to give concerning one count and a strong need to refrain from testifying on the other." United States v. Steele, CR 07-10004(01), 2007 WL 3142815 at *3 (D.S.D. Oct. 22, 2007) (referencing United States v. Jardan, 552 F.2d 216, 220 (8th Cir. 1977) ("it is essential that the defendant present enough information regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of 'economy and expedition in judicial administration' against the defendant's interest in having a free choice with respect to testifying.") (internal citation omitted).

Defendant does not identify the problematic counts. The court cannot speculate how to support the defendant's claim that testimony on one or more of the counts will prejudice him on other counts. "In lieu of a severance, the court may assist jurors compartmentalizing the evidence by giving cautionary instructions." Steele, 2007 WL 3142815 at *4 (referencing United States v. Boone, 437 F.3d 829, 838 (8th Cir. 2006) ("risk of spillover best cured through cautionary instructions")). "Even a general instruction reminding jurors that they must consider each count . . . separately may be sufficient to avoid a severance." Id. (referencing Zafiro v. United States, 506 U.S. 534, 539 (1993)). "[A] joint trial gives the jury the best perspective on

13

all of the evidence and therefore increases the likelihood of a correct outcome." Id. (citing United States v. Darden, 70 F.3d 1507, 1528 (8th Cir. 1995)).

Defendant's motion to sever (Docket 70) is denied.

### 4. MOTION FOR A DAUBERT HEARING

Defendant filed a motion for a Daubert hearing even though "[t]he government has not filed a Notice of Intent to use any expert." (Docket 89 at p. 3). Rather, defendant suggests "[t]he government may attempt to present witnesses that will testify about [a number of factual and legal issues] . . . ." Id.

In response, the government represents "the only witness the United States intends to call who may offer expert testimony is Revenue Agent (RA) Susan Callahan." (Docket 92 at p. 2). The government describes RA Callahan's proposed testimony as follows:

> The evidence at trial will show that RA Callahan audited the defendant in 2007, and she will provide factual testimony about her audit, her observations, and the information she conveyed to the defendant. In conveying this information, RA Callahan will also impart information to the jury regarding her understanding of the regulations of money transmitting businesses. The United States will also seek testimony from RA Callahan regarding the differences between the defendant's business during the 2007 audit and during the time periods included in the indictment and whether those changes would have changed her conclusions.

Id. at pp. 2-3. This expansion of testimony is necessary, in the government's opinion, because "[t]he defendant is likely to seek information

14

from RA Callahan regarding her audit and findings in 2007, to prevent her from also making conclusions about his business in 2010-2011 would provide the jury with an [sic] incomplete and inaccurate evidence." Id. at p. 3.

Defendant further suggests that "[w]ere the Court inclined to admit such testimony, if it exists, Defendant requests that a *Daubert* hearing be held so that the admissibility issue can be conducted outside the presence of the jury." (Docket 89 at p. 5). Defendant recognizes his generalized challenge is more a request for "a balancing test under (Fed. R. Evid.] Rule 403." Id. "If the Court were to allow the expert testimony and evidence under Rule 702, Mr. Olmsted[] asserts as an alternative argument that such evidence and testimony should be prohibited under Rule 403, on the basis that its probative value is substantially outweighed by the danger of unfair prejudice." Id.

The government has not properly identified an expert witness for trial. See Fed. R. Crim. P. 16(a)(1)(G). At the same time, defendant fails to state a proper challenge to an expert's testimony under Fed. R. Evid. 702 or Daubert. Challenges under Fed. R. Evid. 401, 402, and 403 are more properly made as motions *in limine*.

Defendant's motion for a Daubert hearing (Docket 88) is denied.

**ORDER**

Based upon the above analysis, it is hereby

ORDERED that defendant's motion (Docket 60) is denied. The parties shall simultaneously file briefs addressing the issues posed on page 8 by September 20, 2012.

IT IS FURTHER ORDERED that defendant's motion (Docket 68) is denied.

IT IS FURTHER ORDER that defendant's motion (Docket 70) is denied.

IT IS FURTHER ORDERED that defendant's motion (Docket 88) is denied.

Dated September 6, 2012.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE